CONSTANT (GLADDING v.). See Case No. 5,468.

CONSTITUTION, The (REEVES v.). See Case No. 11,659.

---

## Case No. 3,137.

### CONSUL OF SPAIN v. The CONCEPTION.

[2 Wheeler, Cr. Cas. 597;[1] Brunner, Col. Cas. 497.]

Circuit Court, D. South Carolina. 1819.[2]

INTERNATIONAL LAW—RIGHTS OF SOVEREIGNTY.

The fact of national independence may be deduced from history by courts exercising jurisdiction of international law; no explicit official recognition is necessary.

[Appeal from the district court of the United States for the district of South Carolina.] In admiralty.

JOHNSON, Circuit Justice. This vessel and cargo are clearly Spanish property, and the corvette La Union, by which she was captured, was a commissioned cruiser of the republican or revolted province (for names prove nothing) of Buenos Ayres. The prize put into this port in distress, was libelled by the Spanish consul in behalf of the Spanish owners, and by the decree of the district court ordered to be restored on two grounds: First. That the courts of this government cannot recognize the commission under Buenos Ayres. Second. That the capturing vessel had recruited men while lying in the mouth of the Mississippi in the month of April last, which men were on board at the time of this capture. As to the second ground, I cannot think that the evidence was such as sanctioned the decree of the district court; for, besides that the fact is but feebly established by the witnesses who swear to it, when their testimony is compared with each other, and with that of the officers, the only witness who testifies to the national character of the four men said to have been enlisted, proves them to have been foreigners, not Americans, and to have come on board the capturing vessels to enter. The case has never been included in any of the penal laws passed by congress on this subject, nor have foreign governments any ground for claiming from the United States that such a case should have been included. The fact of illegal equipment, therefore, I consider as unsubstantiated. With regard to the first and principal ground on which the decree is founded, I am of opinion that it is one of more delicacy than real difficulty. To have dismissed the libel it was not necessary to recognize the independence of Buenos Ayres as one of the family of nations. The indisputable fact known, to all the world, and recognized by our own executive in many official communications, of the existence of open, solemn war between Spain and an extensive and powerful colony, is enough to impose on us, as a nation, the duties of neutrality. The colony asserts, the social compact is violated by the parent state, and the state of dependence or allegiance no longer existing. On this question an appeal is made to the god of armies, and no inferior tribunal ought to interfere. The colony claims from us no acknowledgment of her independence; she only demands of us to leave her in possession of what she can win by arms. Spain, unable to rescue by force, solicits our aid to seize, in violation of the rights of hospitality, the property that has been forced into our harbors; our duty is to lend our aid to neither, but to leave them as we find them, rigidly adhering to the duties of neutrality. This is not a piratical capture, and therefore not a case within the provisions of our treaty with Spain. It is a seizure in the exercise of the rights of war, not by one who wages war against the human race, but one who has singled out Spain for the sole antagonist. All seizures of property within our limits we are bound by that treaty to prevent, but the duty to restore is confined solely to the case of rescue from those whom we can recognize as pirates. In the Case of Palmer and others, in the supreme court, the principles laid down by the chief justice excluded all idea that this was a piratical capture. It was then a seizure jure belli, and the rights of war are necessarily commensurate with the power of maintaining it openly and solemnly, more especially upon the high seas, the jurisdiction of which is not susceptible of that demarkation and appropriation which takes place on the land. This conflict has long been carried on between the colony and parent state. The event is at least doubtful. It is on both sides an assertion of a supposed existing right, and neither can claim, of a nation to whom their disputes are immaterial, any act of interference which may involve it in a contest with the victor. Much has been said, and some cases and opinions cited to show that this court cannot recognize the independence of a revolted colony, until that recognition shall have proceeded from our own government or the parent state. There was a time when this country negotiated and fought to maintain a different doctrine; and it will be recollected that in the opinion before expressed I have not thought it necessary, in this case,

---

[3] [From 1 Am. Law Reg. (N. S.) 116.]

[1] [Reported by Jacob D. Wheeler, Esq.]

[2] [Reversed in La Conception, 6 Wheat. (19 U. S.) 235.]

to assert a different doctrine. But as the doctrine on this point is nowhere laid down fully to my satisfaction, I will embrace this opportunity to state briefly my views of the subject. The recognition of our own government, whatever be the state of fact, removes all question of doubt, and our courts must consider the governments thus recognized as independent; and so the recognition of the parent state actually produces a state of independence. But courts exercising jurisdiction of international law may often be called upon to deduce the fact of national independence from history, evidence, or public notoriety, where there has been no formal public recognition. The actual possession and long exercise of all the attributes of a state of independence may be legally resorted to, without giving just cause of umbrage to a nation that does not possess the power to subjugate a revolted colony. There exist many nations at this day which may claim of courts of international law all the rights of independent nations, and may be judicially recognized as such, notwithstanding no act of government has acknowledged them in that capacity; and some which hold it altogether by the sword, which acquires it when the parent state relinquishes the conflict, or, plainly evinces an inability to pursue it with success. I should say her recognition in words is unnecessary; and should our own government ever exercise towards a revolted colony those acts of comity or communication which are known and practiced in the intercourse of nations, I should consider all positive explicit recognition as unnecessary to support the claims of such states to a judicial recognition. The establishment of many such facts would in my estimation supersede the necessity of explicit official recognition. Our own courts have in several instances been called on to express opinions on this subject; and although the opinions which they have expressed may, in their language, appear very general, yet that language has always been used in reference to cases in which the conflict was actually kept up. In the Case of Palmer, the chief justice had expressly limited his observations to such a case flagrante bello, it is a question of policy; there is an actual absence of such evidence as a court of justice can act upon, and the question is altogether one on which the executive or legislative power is called to act. Decree reversed, property restored, and libel dismissed with costs.

The decree of Judge Johnson, in the case of the Spanish schooner Conception, was appealed to the supreme court, at Washington.

[NOTE. Upon the new proofs taken since the hearing in the circuit court, it is apparent that the capturing vessel was originally equipped, manned, and armed in the United States for a cruise against Spain, and sailed with that intent, being owned by citizens of the United States. There is no satisfactory evidence that the American ownership ever ceased, or that there was a real bona fide sale of the vessel at Buenos Ayres, consequently the capturing vessel must still be considered as owned in the United States, and the capture therefore was illegal. Mr. Justice Story, delivered the opinion of the court reversing the decree of the circuit court, on an appeal by the Spanish consul. La Conception, 6 Wheat. (19 U. S.) 235.]